Filed 1/11/21  P. v.  Block CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058658 |
| v. | (Super. Ct. No. 17HF1394) |
| DAMON ELLERY BLOCK, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

Defendant Damon Ellery Block stole a car, drove it 75 miles per hour on Santiago Canyon Road, crossed the center divider into oncoming traffic, and crashed into a motorcycle. The motorcycle driver and a passenger were thrown onto the pavement: The driver was killed, and the passenger suffered serious injuries. Block abandoned the car and fled the scene on foot. A jury convicted Block of vehicular manslaughter with gross negligence, reckless driving, hit and run causing permanent injury or death, and unlawful driving of a vehicle. He was sentenced to 15 years 4 months in prison.

Block argues three grounds for reversal: (1) the trial court erred in responding to a question by the jury by directing it the jury instructions; (2) the prosecutor erred[1] in closing argument by disparaging Block's trial counsel; and (3) the trial court violated his due process rights by imposing fines and assessments without making a determination of his ability to pay.

We conclude the trial court's response to the jury's question was not an abuse of discretion and, if erroneous, was harmless. The prosecutor's brief comment during closing argument did not constitute prosecutorial error and was, in any event, harmless. Any error in failing to hold an ability to pay hearing was harmless beyond a reasonable doubt because, by earning prison wages, Block will be able to pay the fines and assessments imposed. We therefore affirm.

## FACTS

In the early afternoon of August 1, 2016, Block stole a 1994 Honda Accord from a tow yard in Santa Ana. A surveillance video from the tow yard showed Block holding a Lipton iced tea bottle.

---

[1] We use the term prosecutorial error rather than prosecutorial misconduct because prosecutorial error is "'[a] more apt description of the transgression.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.)

2

At 2:49 p.m. Block was driving the Honda Accord southbound along Santiago Canyon Road, a two-lane roadway through a sparsely populated area of Orange County. The two lanes were separated by a double yellow line. The speed limit on Santiago Canyon Road was 55 miles per hour. According to an eyewitness, Block was driving "super fast"—about 75 miles per hour.

As Block turned a curve, he lost control of the Honda Accord and drove off the road and onto the dirt shoulder. Block reentered the southbound lane of Santiago Canyon Road, crossed the double yellow line into the northbound lane, and drove directly into oncoming traffic. After barely missing a car, Block crashed head-on into a motorcycle. The driver of motorcycle, D.K., and his passenger, J.K., were thrown from the motorcycle and onto the pavement.

Block drove back across the double yellow line, then off the road and into a ditch. He abandoned the car and fled the scene on foot. When Block was found by law enforcement officers on August 17, he had injuries on his face, neck, and hands.

D.K. died from blunt force injuries to his torso, including fractures to most of his ribs, resulting in blood in both chest cavities, liver lacerations, spinal column fracture, multifocal levels of spinal cord injury, and pelvic fractures. J.K. suffered fractures and broken bones in both of her hands, a broken femur that required a metal rod being placed in her leg, and a fractured wrist that required the insertion of a metal plate.

Among the items recovered from the Honda Accord were a cellular phone, an olive jar, sunglasses, and a Lipton iced tea bottle. Fingerprints were recovered from those items and from various spots on the interior and exterior of the Honda Accord and compared to an exemplar of Block's fingerprint. The fingerprint recovered from the Lipton iced tea bottle matched Block's fingerprint. Inspection of the Honda Accord by law enforcement revealed the braking and steering systems performed satisfactorily. Inspection of the motorcycle revealed no system defects.

3

## CONVICTIONS AND SENTENCING

The jury convicted Block, as charged, of vehicular manslaughter with gross negligence (count 1, Pen. Code, § 192, subd. (c)(1)), reckless driving (count 2, Veh. Code, § 23105, subd. (a)), hit and run causing permanent injury or death (count 3, *id.*, § 20001, subd. (a)(b)(2)), and unlawful driving of a vehicle (count 4, *id.*, § 10851, subd. (a)). The jury found it to be true, as to count 1, that Block fled the scene (*id.*, § 20001, subd. (c)) and, as to count 2, that Block caused one victim to suffer multiple bone fractures (*id.*, § 23105, subd. (a)). The trial court found it to be true that Block committed the crimes while released from custody and on bail in another felony matter. (Pen. Code, § 12022.1, subd. (b).)

The court sentenced Block to a term of six years in prison on count 1, with consecutive sentences of eight months on count 2, one year on count 3, eight months on count 4, five years on the enhancement for fleeing the scene, and two years on the bail enhancement. The total term was 15 years 4 months in prison, with 1,476 days of credit for time served.

## DISCUSSION

### I.

### The Trial Court's Response to the Jury's Question Was Not Erroneous and Any Error Would Be Harmless.

A. *Background*

The trial court instructed the jury in accordance with CALCRIM Nos. 592 and 593 on gross vehicular manslaughter and the lesser-included offense of misdemeanor vehicular manslaughter. In the course of deliberations, the jury submitted the following question: "Can the court give any additional examples, guidance, or case law to clarify the difference between gross and ordinary negligence?" Counsel was notified of the jury's question.

4

The trial court prepared this response to the jury's question: "You have asked the court to clarify the difference between gross negligence and ordinary negligence. [¶] The term 'gross negligence' is defined in CALCRIM 592 on p. 30 of the instructions. [¶] The term 'ordinary negligence' is defined in CALCRIM 593 on p. 46 of the instructions. [¶] The court cannot give you further guidance on the meaning of those terms." This response was sent to the jury. After deliberating 68 minutes more, the jury announced it had reached a verdict.

Block contends the court's response was erroneous and violated his constitutional rights. He argues the court should have provided clarification and examples of the difference between gross and ordinary negligence.

The Attorney General argues that Block forfeited his challenge to the trial court's response to the jury's question by failing to pose an objection. Before the jury began deliberating, counsel stipulated that, if the jury had a question, the court would prepare a response and provide counsel the question and response by telephone. The record shows that the court did notify counsel of its proposed response, but does not reflect whether Block's counsel posed an objection. It is not entirely clear from the record, however, whether Block's counsel had a full and fair opportunity to object, and, therefore, we decline to find forfeiture.

B. *Referring the Jury to the Instructions Was Not an Abuse of Discretion.*

When a jury asks a question during deliberations, the trial court must respond by informing the jury on the desired points of law. (Pen. Code, § 1138.)[2] The trial court has discretion to respond by referring the jury to the original instructions, if

---

[2] Penal Code section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

they are full and complete, or by providing additional explanation. (*People v. Beardslee* (1991) 53 Cal.3d 68, 97; *People v. Eid* (2010) 187 Cal.App.4th 859, 881-882.) "[The trial court] should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given." (*People v. Beardslee, supra*, at p. 97.) Error under Penal Code section 1138 is reviewed under the abuse of discretion standard. (*People v. Eid*, at p. 882.)

In deciding how to respond to a jury question about instructions, a trial court must consider how "it can best aid the jury." (*People v. Lua* (2017) 10 Cal.App.5th 1004, 1017.) While repeating the text of a jury instruction might not be preferable (*People v. Thompkins* (1987) 195 Cal.App.3d 244, 253), "comments diverging from the standard [instructions] are often risky" (*People v. Beardslee, supra*, 53 Cal.3d at p. 97).

The offenses of gross vehicular manslaughter and misdemeanor vehicular manslaughter differ primarily in the degree of negligence with which the defendant must have committed the act producing the injury.[3] Gross vehicular manslaughter requires gross negligence; misdemeanor vehicular manslaughter requires ordinary negligence.

CALCRIM No. 592 explains the meaning of gross negligence. As given in this case, CALCRIM No. 592 reads: "Gross negligence involves more than ordinary carelessness, inattention, or mistake in [judgment]. A person acts with gross negligence when: [¶] 1. He acts in a reckless way that creates a high risk of death or great bodily injury; [¶] [and] [¶] 2. A reasonable person would have known that acting in that way

---

[3] The jury was instructed on the elements of gross vehicular manslaughter as follows: "1. The defendant drove a vehicle; [¶] 2. While driving that vehicle, the defendant committed an infraction; [¶] 3. The defendant committed the infraction with gross negligence; [and] [¶] 4. The defendant's grossly negligent conduct caused the death of [D.K.]" (See CALCRIM No. 592.) The jury was instructed on the elements of misdemeanor vehicular manslaughter as follows: "1. While driving a vehicle, the defendant committed an infraction; [¶] 2. The infraction was dangerous to human life under the circumstances of its commission; [¶] 3. The defendant committed the infraction with ordinary negligence; [and] [¶] 4. The infraction caused the death of another person." (See CALCRIM No. 593.)

6

would create such a risk. [¶] In other words, a person acts with gross negligence when the way he acts is so different from how an ordinarily careful person would act in the same situation that his act amounts to disregard for human life."

CALCRIM Nos. 592 and 593 are full and complete. They are accurate statements of the law. CALCRIM No. 592 provides a clear and uncomplicated explanation of gross negligence. Attempting to clarify that explanation or to provide examples of gross negligence and ordinary negligence would have been risky indeed and likely would have confused the jury rather than informed it. Giving the jury examples of gross negligence and ordinary negligence might have distracted the jury from examining the evidence and following the instructions and, instead, led it to reach a verdict by comparing the facts to the given examples. The trial court, which worked with the jury through trial, was in the better position to consider the options and decide how best to aid the jury. The court acted within its discretion by deciding the best way to aid the jury was to refer it back to the instructions instead of providing explanations or examples.

C. *Any Error Was Harmless.*

In addition, any error was harmless. Error by the trial court under Penal Code section 1138 in responding to a jury's question is subject to the prejudice standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Lua, supra*, 10 Cal.App.5th at p. 1017.) Error is prejudicial if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Roberts* (1992) 2 Cal.4th 271, 326.)

The evidence that Block acted with gross negligence was overwhelming. Eyewitness accounts and law enforcement investigation established that Block drove at an excessive speed down a two-lane road, spun off onto the dirt shoulder, drove back onto the road, crossed the center divider into the wrong lane, barely missed an oncoming car, and crashed head-on into a motorcycle, killing the driver and seriously injuring the

7

passenger. This is virtually the definition of gross vehicular negligence. The evidence established that the Honda Accord's braking and steering systems were satisfactory. Block's primary defense at trial was that he was not the driver of the Honda Accord and the police had conducted a shoddy investigation leading to his arrest. Any explanation or examples of gross negligence and ordinary negligence that the court conceivably might have given almost certainly would have led to the same verdict. There is no reasonable probability that a result more favorable to Block would have been reached in absence of the claimed error.

## II.

### The Claim of Prosecutorial Error, if Preserved for Appeal, Has No Merit, and Any Error Would Be Harmless.

Block contends the prosecutor committed error during closing argument by attacking the credibility of his trial counsel. The single comment made by the prosecutor, whether viewed in isolation or in context, did not constitute prosecutorial error and was harmless.

A. *Background*

In closing argument, defense counsel gave a PowerPoint presentation during the course of which the prosecutor objected to a particular slide on the ground it included evidence that the court had determined to be inadmissible hearsay. The trial court sustained the objection and so informed the jury. A short time later, defense counsel, addressing a PowerPoint slide concerning fingerprint evidence, argued "the fingerprints are all of no value, except an inconclusive [one] related to the Lipton Brisk." The prosecutor objected on the ground the argument misstated the evidence in that Block's fingerprint had been positively identified on the Lipton iced tea bottle found in the Honda Accord. In a chambers conference, the court asked "[w]asn't there a positive fingerprint?," commented the defense argument was "very misleading," and told defense

8

counsel to "clean it up a little." Back in front of the jury, defense counsel reviewed the fingerprint evidence and, when counsel got to the fingerprints on the iced tea bottle, stated, "[t]he second one came to Mr. Block, which made sense, because he is seen in the video with a Lipton brisk bottle."

During rebuttal, the prosecutor argued: "You know, there were a lot of— you were given a lot of explanation and a lot of excuses. Right? And there were a lot of emotional feelings that defense counsel was giving you. Actually, I think she said 'disturbed,' maybe or 'concerned'—or 'disturbed,' and it was all in reference to the investigation and to the prosecution. *Would you be more disturbed with the fact that things were being put up on the screen as evidence for you to consider in this case that were inaccurate?*" (Italics added.)

Defense counsel objected to the italicized comment without requesting an admonition to the jury. The trial court sustained the objection and stated, "[t]hat's out of bounds."

B. *The Claim of Prosecutorial Error Is Forfeited.*

"To avoid forfeiture of a claim of prosecutorial misconduct, a defendant must object and request an admonition." (*People v. Perez* (2018) 4 Cal.5th 421, 450.) Without an objection and a request for an admonition, the claim can be reviewed on appeal only if an admonition would not have cured the harm caused by the prosecutorial error. (*People v. Hoyt* (2020) 8 Cal.5th 892, 952.) Block's trial counsel did not request an admonition. Nothing in the record suggests an admonition would not have cured whatever harm Block might have suffered. Block therefore forfeited his claim of prosecutorial error.

C. *The Prosecutor Did Not Commit Error, and Any Error Would Be Harmless.*

If preserved for appellate review, Block's claim of prosecutorial error has no merit. "Improper comments violate the federal Constitution when they constitute a

pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process. [Citation.] Improper comments falling short of this test nevertheless constitute misconduct under state law if they involve use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." (*People v. Cortez* (2016) 63 Cal.4th 101, 130.) To find prosecutorial error, we must view the challenged statements in the context of the entire argument and the jury instructions to determine whether there was a reasonable likelihood the jury understood or applied the comments in an improper or erroneous manner. (*Ibid.*) "If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.'" (*Ibid.*) "'[W]e "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 894.)

In this case, the act claimed to be prosecutorial error was but one sentence made in rebuttal. This single sentence did not infect the trial with unfairness or deny Block a fair trial. A claim of prosecutorial error therefore must be founded on state law.

Under California law, "[i]t is misconduct for the prosecutor in argument to impugn the integrity of defense counsel or to suggest defense counsel has fabricated a defense." (*People v. Cash* (2002) 28 Cal.4th 703, 732.) In addressing a claim of prosecutorial error based on disparagement or denigration of defense counsel, we ask whether the prosecutor's comments were a fair response to the remarks of defense counsel. (*People v. Pearson* (2013) 56 Cal.4th 393, 431-432.) Here, we conclude the prosecutor's comments were a fair response. Defense counsel had erroneously asserted the fingerprint test for the print recovered from the Lipton iced tea bottle was inconclusive when in fact that fingerprint was positively shown to be Block's. Defense counsel's assertion was neither a slip of the tongue nor a poor choice of words, but was intentionally made and reflected in a PowerPoint slide. The prosecutor's comment in

10

rebuttal that defense counsel had placed "inaccurate" evidence on the screen was an accurate response to defense counsel's assertion.

Asking the jury whether it was "more disturbed" about the inaccurate evidence put up on the screen, though not a particularly temperate choice of phrasing, did not cross the line into error. The prosecutor did not call defense counsel a liar, describe her as disingenuous, or make any other denigrating or disparaging comments about her. (See *People v. Pearson, supra*, 56 Cal.4th at pp. 431-432 [prosecutor's comment that defense counsel was being disingenuous was not misconduct]; *People v. Cash, supra*, 28 Cal.4th at pp. 732-733 [prosecutor's comment that defense counsel colluded in investigator's commission of perjury was not misconduct]; *People v. Frye* (1998) 18 Cal.4th 894, 978 [prosecutor's characterization of defense counsel's challenge to a witness's credibility as "'ludicrous'" and a "'smoke screen'" was not misconduct], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390.)

Considering the challenged comment in the context of the entire rebuttal argument and the instructions, we conclude there was no reasonable likelihood the jury understood or applied the comments in an improper or erroneous manner. As we have explained, the prosecutor's challenged comment was but a single sentence made during rebuttal argument. It is one thing to discern the meaning of statements committed to writing and quite another to assess the effect of an oral comment on a listener. Here, the prosecutor's comment comes to us, and to appellate counsel, as a passage in a printed transcript that can be studied and parsed, but to the jury the comment was oral, brief, and ephemeral. The comment was somewhat convoluted to begin with and the likelihood is that it would have flown past the jurors before they would have been able to connect the words "more disturbed" with a challenge to defense counsel's integrity. In addition, the court instructed the jury that "[n]othing that the attorneys say is evidence" and "their remarks are not evidence" (see CALCRIM No. 222) and that the jurors were not to let

11

bias for or against the attorneys or the defendant influence their decision (see CALCRIM No. 200).

If the prosecutor committed error, it was harmless. "A defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." (*People v. Crew* (2003) 31 Cal.4th 822, 839.) The evidence of guilt in this case was, as we have explained, very strong. Although the trial court did not admonish the jury, the court did say the prosecutor's comment was "out of bounds." Without the claimed prosecutorial error, it is not reasonably probable the jury would have reached a verdict more favorable to Block.

## III.

### Any Error in Imposing Fines and Fees Was Harmless Beyond a Reasonable Doubt.

The trial court imposed a restitution fine of $300 (Pen. Code, § 1202.4, subd. (b)), a court operations assessment fee of $160 (*id.*, § 1465.8), and a criminal conviction assessment fee of $120 (Gov. Code, § 70373). Block contends imposition of that fine and those fees violated his due process rights under the federal and state constitutions because the trial court did not hold a hearing on and make a determination of his ability to pay them. (See *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1172-1173 (*Dueñas*).)

On a vastly different set of facts, the *Dueñas* court held that due process of law requires that a trial court determine a defendant's "present ability to pay" before imposing court facilities and operations assessments. (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.) Assuming for purposes of this opinion only that *Dueñas* was correctly decided, any error in failing to conduct a hearing on Block's ability to pay was harmless beyond a reasonable doubt.

12

Error in failing to hold an ability to pay hearing is deemed harmless where, as here, the defendant's sentence is long enough that he or she will be able to earn enough in prison wages while incarcerated to pay off the assessments. (See, e.g., *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [six years, with 332 days of presentence credits].) "[Defendant's] ability to pay includes '[his] ability to obtain prison wages and to earn money after his release from custody.' [Citations.] '[E]very able-bodied prisoner' must work while imprisoned. [Citation.] Prison wages range from $12 to $56 per month, depending on the job and skill level involved." (*People v. Cervantes* (2020) 46 Cal.App.5th 213, 229, citing Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).)

Block was 45 years old at the time he was sentenced. Nothing in the record suggests he is incapable of performing work. The total amount of the fine and fees is $580. Assuming Block earns the lowest prison wage of $12 a month for the duration of his sentence, it will take him approximately 48.33 months (about 4 years 11 days) to pay off that amount. Block was sentenced to a prison term of 15 years 4 months and was awarded 1,476 days (about 4 years 16 days) of presentence custody and conduct credit. Even assuming he is eligible for and earns custody credit under Penal Code section 2933, Block will be able to pay the $580 fine and fees with prison wages earned during his incarceration.

We therefore conclude that Block's ability to pay the total amount imposed with prison wages "forecloses a meritorious inability to pay argument." (*People v. Jones, supra*, 36 Cal.App.5th at p. 1035; see *People v. Johnson* (2019) 35 Cal.App.5th 134, 140 [concluding that "because [defendant] has ample time to pay it from a readily available source of income while incarcerated, the error is harmless beyond a reasonable doubt"].) Accordingly, we find any *Dueñas* error to be harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.